Estate of Joanna Randall Brown,
Estate of Dallas Nicole Brown and Clark Brown,
Plaintiffs-Appellants,†

v.

Mathy Construction Company
and ABC Insurance Company,
Defendants-Third-Party Plaintiffs-Respondents,

v.

Mattison Contractors, Inc., Kraemer Company
LLC, Valiant Insurance Company, Central
State Signing, Inc., West Bend Mutual Insurance
Company, Westport Insurance Company and
General Casualty Company of Wisconsin,
Third-Party Defendants.

Court of Appeals

*No. 2007AP1543. Submitted on briefs January 14, 2008.
—Decided June 26, 2008.*

2008 WI App 114

(Also reported in 756 N.W.2d 417.)

† Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Dan Arndt* of *Arndt, Buswell & Thorn S.C.*, Sparta.

On behalf of the defendants-third-party-plaintiffs-respondents, the cause was submitted on the brief of *Michael S. Kreidler* of *Stich, Angell, Kreidler & Dodge, P.A.*, Minneapolis, MN.

Before Dykman, Lundsten and Bridge, JJ.

¶ 1. DYKMAN, J. The Estate of Joanna Brown appeals from an order granting summary judgment to Mathy Construction Company, a contractor for the Wisconsin Department of Transportation (DOT). Joanna and her daughter Dallas died when their car struck an exposed bridge abutment on a segment of a state highway that was under construction. The trial court held that under *Estate of Lyons v. CNA Insurance Cos.*, 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996), Mathy is entitled to governmental immunity from liability for the deaths of Joanna and Dallas. We conclude that the undisputed facts demonstrate that Mathy, as a state contractor, is entitled to *Lyons* governmental immunity. Accordingly, we affirm.

## *Background*

¶ 2. The following undisputed facts come from the pleadings, affidavits, and depositions. On June 22, 2002, Joanna Brown was driving on a highway under construction as part of a DOT project when her car struck an exposed bridge abutment and caught fire. Joanna and her nine-year-old daughter, Dallas, were fatally injured.

¶ 3. Mathy was DOT's prime contractor for the construction project. The bridge abutment that Joanna's car struck was exposed due to construction. As part of the project, workers removed bridge guardrails that provided some protection to bridge users, and after further road work, replaced them with new guardrails, referred to as "energy absorbing terminals" (EATs). DOT had decided to keep the road open during construction, but specified required safety measures while the work was in progress, including signs and drums. DOT also specified that the construction work was to begin on April 15, 2002, and be completed in sixty working days.

¶ 4. Workers completed the removal of old guardrails throughout the project site by April 25, 2002. On May 29, 2002, workers began installing the EATs, and this process continued along the project area throughout June. The three-mile stretch of State Trunk Highway 131 where the accident occurred was one of the last project areas where the EATs were installed. As of June 22, the date of the accident, EATs had not yet been installed there. The entire project was completed by early July, within the sixty days allotted by DOT.

## *Standard of Review*

¶ 5. We review summary judgment de novo, without deference to the trial court's conclusions. *Lyons*, 207 Wis. 2d at 458. We independently apply the standards in WIS. STAT. § 802.08(2) (2005–06).[1] *Kafka v. Pope*, 194 Wis. 2d 234, 240, 533 N.W.2d 491 (1995).

¶ 6. The issue of governmental immunity involves applying legal standards to a set of facts, which is a question of law. *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314. We therefore review governmental contractor immunity de novo. *See Lyons*, 207 Wis. 2d at 452.

## *Discussion*

¶ 7. The estate claims that Mathy negligently delayed installing the new EATs for twenty-nine days after it was feasible to do so, thus causing the accident

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

that killed Joanna and Dallas. It also claims that Mathy is not entitled to immunity for this negligence because the *Lyons* test for contractor immunity has not been met. Because we conclude that Mathy is entitled to governmental immunity under *Lyons*, we need not address the estate's negligence argument. When addressing a claim of governmental immunity, we assume negligence. *Lodl*, 253 Wis. 2d 323, ¶ 19. Thus, we will assume for purposes of this opinion that Mathy negligently delayed putting in the new EATs, causing the accident.[2]

¶ 8. In *Lyons*, 207 Wis. 2d at 449, we concluded that governmental immunity extends "to private parties who act under directives from state agencies." In that case, Lyons died when another car struck her car at an intersection after passing over a bridge and missing the stop sign. *Id.* at 449–50. Lyons's estate argued that Strand, the designer of the bridge, negligently designed the bridge because the bridge did not conform to safety standards. *Id.* at 450–51. The evidence showed that although Strand initially designed the bridge with a relatively low vertical curve, that is, with a less steep rise, DOT decided to use a greater vertical curve, that is, to make the bridge steeper. *Id.* Strand argued that while no Wisconsin case had extended the governmental immunity statute, WIS. STAT. § 893.80(4), to state contractors, other jurisdictions had, and the court should adopt such a rule for Wisconsin. *Id.* at 452.

---

[2] We need not address the parties' arguments over safety precautions that could have been, but were not, used or required, such as temporary guardrails or road closure. That is a negligence issue. Instead, our focus is on the safety requirements provided to Mathy by DOT, which relates to the issue of governmental immunity.

¶ 9.   We agreed, noting that "the focus of [the] inquiry should be whether Strand was simply acting as an 'agent' of governmental authorities who had retained ultimate responsibility for these aspects of the bridge design." *Id.* at 453–54. We concluded that governmental contractors can be immune from negligence suits when municipal or state authorities direct them to perform certain tasks under contract. *Id.* at 457. We reasoned that "Strand should be immune, just as the state authorities would be, because [the] court would otherwise be placed in the position of having to examine the merits of what was really a political choice." *Id.* at 454. We granted Strand's motion for summary judgment because the record demonstrated, first, that DOT approved the vertical curve of the bridge and, second, that DOT directed Strand to implement this design even though both knew that this was outside accepted standards. *Id.* at 461. Thus, under *Lyons*,

> [a]n independent professional contractor who follows official directives is an "agent" for the purposes of § 893.80(4), STATS., or is entitled to common law immunity when:
>
> (1)   the governmental authority approved reasonably precise specifications;
>
> (2)   the contractor's actions conformed to those specifications; and
>
> (3)   the contractor warned the supervising governmental authority about the possible dangers associated with those specifications that were known to the contractor but not to the governmental officials.

*Id.* at 457–58.

503

¶ 10.   The estate asserts that Mathy has not met the first prong for governmental immunity under *Lyons* because the state did not provide Mathy with reasonably precise specifications for when to install the EATs. The estate argues that *Lyons* requires that the state specifically mandate the action that constitutes negligence in order for immunity to attach. That is, the estate argues that Mathy would only be entitled to immunity if DOT had specifically instructed Mathy not to install the EATs for a specific amount of time after it was feasible to do so. The estate asserts the only time requirement was that Mathy install the EATs within the sixty-day period for the entire project.

¶ 11.   The estate's specifications argument misses the mark. The question is not whether DOT did or did not specify the amount of time the abutment was to be unprotected by a guardrail. This formulation of the issue ignores the safety precautions that were specified. That is, it makes no sense to isolate the sixty-day timing specification from the overall safety requirements. The question is not what other safety precautions might have been taken, but whether the safety requirements provided by DOT were reasonably precise specifications. The undisputed evidence demonstrates that they were.

¶ 12.   DOT's plans allowed for the possibility that there would be an undetermined lag between removal of the old guardrails and installation of the EATs. DOT decided to keep the road open for the project and directed that signs and barrels were to be used to indicate construction was occurring. DOT's plans for the project provided several pages of required safety measures during construction, including official road signs, drums placed at fifty-foot intervals, delineator

posts, and pavement markings. DOT provided a diagram showing placement of the traffic control measures to be used for lane closure, such as signs and flaggers (people holding "stop/slow" paddles), and diagrams specifying the pavement markings that should be made. DOT determined that no temporary barricades or guardrails were necessary between the time that the old guardrails were taken down and the EATs were put in place because, according to the state design, the traffic control measures and placement of barrels was sufficient to warn traffic until EATs could be installed. DOT also specified that the construction work was to begin on April 15, 2002, and be completed in sixty working days. We conclude that these safety requirements were "reasonably precise specifications."

¶ 13. The estate argues that additional safety measures were necessary, including placing the new EATs as soon as it was feasible to do so. In the estate's view, because the state did not require EATs to be installed immediately after preparation work was done, the contract was not reasonably precise. But a contract which does not require a specific item or timetable for installation can be as precise as one which does require those items. If contractor immunity required a contract to list not only all work and materials required but all work and materials not required, state contracts would approach encyclopedic proportions. A contract is reasonably precise if it reasonably and precisely lists items required; common sense dictates that items not required by the contract do not obligate the contractor to provide them. Moreover, while the estate's timetable argument may or may not support a negligence finding, it does not go the question of whether Mathy is entitled to governmental immunity under *Lyons*.

¶ 14.   Part two of the *Lyons* test asks whether the contractor's actions conformed to the specifications. The estate does not argue that Mathy failed to follow any of the safety precaution specifications.

¶ 15.   Part three of the *Lyons* test addresses whether there were dangers associated with the specifications that were known to the contractor but not to the governmental officials. The estate does not argue that Mathy knew about something that DOT did not. Our review of the record reveals nothing suggesting that there were dangers known to Mathy but not to DOT.

¶ 16.   The estate also argues that even if *Lyons* applies, Mathy is not entitled to governmental contractor immunity because Mathy had a ministerial duty to protect the public from a known dangerous condition and is therefore liable. *See Cords v. Anderson*, 80 Wis. 2d 525, 541, 259 N.W.2d 672 (1977). This argument misapprehends the nature of a ministerial duty. A ministerial duty is present when a situation indisputably calls for a specific response. *See id.* ("A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." (citation omitted)). Applied here, a ministerial duty would be present if the exposure of the bridge abutment indisputably required a specific safety precaution that was not utilized. It is undisputed that Mathy, acting according to DOT specifications, took steps to prevent vehicles traveling on the highway from striking the exposed abutment. The estate has failed to establish that Mathy had a minis-

terial duty to implement a particular safety measure or set of safety measures that it did not.

¶ 17.   Because the undisputed facts show that (1) DOT provided Mathy with reasonably precise specifications for how to carry out the road construction project, (2) Mathy's work conformed to DOT's project specifications, and (3) DOT was aware of the dangers that the exposed bridge abutment may have presented, we conclude that Mathy is entitled to governmental contractor immunity. Furthermore, we conclude that Mathy did not have a ministerial duty to implement additional safety precautions. Accordingly, we affirm the trial court's grant of summary judgment to Mathy.

*By the Court.*—Order affirmed.