Beverly Bronfeld and Stewart Bronfeld,
Plaintiffs-Appellants,†

v.

Pember Companies, Inc. and West Bend Mutual
Insurance Company, Defendants-Respondents,

United States Centers for
Medicare and Medicaid Services, Defendant.

Court of Appeals

*No. 2009AP2297. Submitted on briefs September 14, 2010.
—Decided October 5, 2010.*

2010 WI App 150

(Also reported in 792 N.W.2d 222.)

† Petition for Review denied 2-7-11.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *C.M. Bye* and *Martha H. Heidt* of *Bye, Goff & Rohde, Ltd.*, River Falls.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Patrick G. Heaney* of *Thrasher, Pelish, Franti & Smith, Ltd.*, Rice Lake.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Beverly and Stewart Bronfeld appeal from a summary judgment granted to Pember Companies, Inc., and its insurer. The Bronfelds allege Pember, a subcontractor working on a road construction project for the City of River Falls, negligently constructed barricades and safety signs and failed to

maintain a safe site for the public. The trial court granted summary judgment to Pember, concluding it was an "agent" of the city and was therefore entitled to governmental immunity. We agree that Pember is entitled to immunity and affirm.

## BACKGROUND

¶ 2. During the summer of 2007, the City of River Falls began a construction project at the intersection of Main and Maple Streets. The project involved replacing signal lights, storm sewers, pavement, curb and gutter, and sidewalk. Monarch Paving was the general contractor for the project, and Pember was a subcontractor responsible for new sidewalks and crosswalks.

¶ 3. The city's engineer, Reid Wronski, along with other city employees, assembled a set of contracts and specifications for the project. Among these documents was a project manual, which contained all the specifications for the project. The project manual is over 250 pages long.

¶ 4. The project manual includes a nine-page section titled "Maintenance of Traffic," which contains detailed specifications related to quality assurance, site conditions, sequencing and scheduling, maintenance, equipment, preparation, operations, and traffic control. This section mandates the use of specific traffic control devices, signs, and barricades. The operations subsection specifies how these barricades and signs must be installed and provides further specifications for pedestrian and traffic access during the course of the project.

¶ 5. The project manual also mandates that the project be conducted in accordance with the Wisconsin Manual on Uniform Traffic Control Devices. The Wisconsin Manual contains standards pertinent to temporary traffic control and pedestrian safety practices.

¶ 6. In addition, the project manual requires the general contractor, Monarch, to submit a traffic control plan to the City of River Falls for approval. Monarch complied with this requirement. The traffic control plan submitted by Monarch specifies particular traffic control devices that must be used and where they must be placed. For instance, the traffic control plan mandates the use of Type III barricades "for road closed areas and to maintain a barrier between construction activity and the traveling public." It also calls for "sidewalk closed" signs on Type II barricades at all locations where the sidewalk has been removed. Wronski reviewed Monarch's traffic control plan, made revisions, and approved the revised plan.

¶ 7. The contract between Monarch and the City of River Falls incorporated the project manual. Pember did not have a contract with the city, but its contract with Monarch incorporated the terms of Monarch's contract with the city. The project manual and traffic control plan therefore applied to Pember, and Pember was contractually bound to follow them.

¶ 8. Sometime during the late summer or early fall of 2007, Pember began the concrete work at the intersection of Main and Maple Streets. Pember's work involved tearing out blacktop and laying down maroon-colored concrete in the crosswalk.

¶ 9. Monarch supplied the barricades for the project, and when Pember employees arrived at the site, they moved the barricades into place. As required by the traffic control plan, Pember employees placed one Type III barricade in the right southbound lane of Main Street to protect their work area and direct traffic away. Pember also placed a "sidewalk closed" sign on a Type II barricade at the edge of the sidewalk leading to the closed crosswalk. After pouring the concrete for the crosswalk, Pember covered its work with tarps and

129

waited seven days for the concrete to cure. Pember left all the barricades in place during this time.

¶ 10.   On October 4, 2007, while Pember's concrete was curing, Beverly Bronfeld attempted to cross Main Street at the Main Street-Maple Street intersection. While walking "close" beside the closed crosswalk, Bronfeld tripped over the leg of the Type III barricade that Pember had put in place to protect its work area. Bronfeld fell to the ground and sustained injuries.

¶ 11.   Later that day, Wronski visited the accident scene with Bronfeld. Wronski thought the barricades were in their proper places, and he did not think the location of the Type III barricade was an obvious hazard. He had no criticism of the types of barricades Pember used or of the locations where Pember had placed them.

¶ 12.   The Bronfelds subsequently filed suit against Pember and its insurer, alleging Pember negligently erected barricades and safety signs and failed to maintain a safe site for the public. The trial court granted Pember's motion for summary judgment, finding that, as an agent of the City of River Falls, Pember was entitled to governmental immunity pursuant to WIS. STAT. § 893.80(4).[1] The Bronfelds now appeal.

## DISCUSSION

■■

¶ 13.   Whether a contractor is entitled to governmental immunity is a question of law that we review independently. *Estate of Brown v. Mathy Constr. Co.*, 2008 WI App 114, ¶ 6, 313 Wis. 2d 497, 756 N.W.2d 417. We also review a grant of summary judgment indepen-

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

dently, applying the same standard as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); *Green Spring Farms*, 136 Wis. 2d at 315.

¶ 14. Here, the Bronfelds contend summary judgment was inappropriate for two reasons. First, they argue this action involves a "highway defect" under WIS. STAT. § 893.83(1), which provides an exception to the general grant of governmental immunity under WIS. STAT. § 893.80(4). Second, they argue Pember is not entitled to immunity because it was not acting as an agent of the City of River Falls. We disagree with both arguments and affirm.

## I. WISCONSIN STAT. § 893.83(1)

¶ 15. The Bronfelds first argue this case falls under WIS. STAT. § 893.83(1), which is an exception to governmental immunity. Section 893.83(1) states, "If damages happen to any person or his or her property by reason of the insufficiency or want of repairs of any highway that any town, city, or village is bound to keep in repair, the person sustaining the damages has a right to recover the damages from the town, city, or village." If a plaintiff's claim is actionable under § 893.83(1), governmental immunity does not apply. *Morris v. Juneau County*, 219 Wis. 2d 543, 559, 579 N.W.2d 690 (1998).[2]

---

[2] WISCONSIN STAT. § 893.83(1), formerly WIS. STAT. § 81.15, was renumbered without substantive change by 2003 Wis. Act

¶ 16. The Bronfelds did not argue in the trial court that their claim involved a highway defect under Wis. Stat. § 893.83(1), and the trial court never ruled on this issue. Generally, we will not consider an issue raised for the first time on appeal. *Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361 (Ct. App. 1992). By failing to argue in the trial court that this action involved a highway defect under § 893.83(1), the Bronfelds forfeited their right to make this argument on appeal.

¶ 17. Furthermore, even if the Bronfelds had properly preserved this issue, the undisputed facts demonstrate this case does not involve an actionable highway defect. Wisconsin Stat. § 893.83(1) only applies to a small area of negligent conduct by a municipality, and in this area it does not necessarily cover all the negligence that might relate to highways. *Morris*, 219 Wis. 2d at 557. The scope of negligence actionable under § 893.83(1) is limited to such matters as the structural and construction components of the road bed and surface. *Dusek v. Pierce County*, 42 Wis. 2d 498, 505, 167 N.W.2d 246 (1969) (holding that § 893.83(1) does not encompass the failure to erect proper signs). Negligent placement of barricades and signs does not constitute "insufficiency" or "want of repairs" within the meaning of § 893.83(1). *Weiss v. City of Milwaukee*, 79 Wis. 2d 213, 225, 227, 255 N.W.2d 496 (1977). Additionally, the alleged defect must exist on the "traveled" portion of the highway. *Id.* at 225.

214, § 136. *Morris v. Juneau County*, 219 Wis. 2d 543, 559, 579 N.W.2d 690 (1998), and the cases cited *infra*, ¶¶ 17–18, were decided before 2003 and therefore refer to § 893.83(1) by its former number. For clarity, in this opinion we refer to the statute by its current number.

¶ 18. Here, Bronfeld tripped over a Type III barricade used to keep the public out of Pember's work area. Her allegations of negligence relate to the placement of this barricade, which is not an actionable highway defect under WIS. STAT. § 893.83(1). *See id.* at 227. Furthermore, the crosswalk where Bronfeld tripped was closed. Thus, it is doubtful the crosswalk was in the "traveled" portion of the road. There was no "want of repair" because the traveling public was precluded from using the crosswalk while it was being reconstructed.

## II. Governmental immunity under WIS. STAT. § 893.80(4)

■

¶ 19. WISCONSIN STAT. § 893.80(4) immunizes local governments and their officers, employees, or agents from liability for acts involving the exercise of discretion or judgment. *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶¶ 20–21, 253 Wis. 2d 323, 646 N.W.2d 314. We have previously held that sign placement is a discretionary duty. *See Harmann v. Schulke*, 146 Wis. 2d 848, 853–54, 432 N.W.2d 671 (Ct. App. 1988); *see also Dusek*, 42 Wis. 2d at 506 (noting that whether to place a stop, warning, or yield sign at a given location is a matter that requires an exercise of discretion). We have also held that a barrier or barricade is a "sign." *Foss v. Town of Kronenwetter*, 87 Wis. 2d 91, 102, 273 N.W.2d 801 (Ct. App. 1978). Thus, if the City of River Falls had placed the barricades at the Main Street-Maple Street intersection itself rather than delegating this task to Pember, it would be immune from suit pursuant to § 893.80(4).

■■

¶ 20. In *Estate of Lyons v. CNA Insurance Cos.*, 207 Wis. 2d 446, 457, 558 N.W.2d 658 (Ct. App. 1996),

133

we extended Wis. Stat. § 890.80(4) immunity to government contractors. We concluded a contractor should not bear liability when "simply acting as an 'agent' of governmental authorities who had retained ultimate responsibility" for a project. *Id.* at 454. An independent government contractor is an agent for purposes of Wis. Stat. § 893.80(4), and is therefore entitled to immunity, if: (1) the governmental authority approved reasonably precise specifications; (2) the contractor's actions conformed to those specifications; and (3) the contractor warned the supervising governmental authority about possible dangers associated with those specifications that were known to the contractor but not to the governmental officials. *Id.* at 457–58.[3]

¶ 21.   The first prong of the *Lyons* test is satisfied by proof that the government provided the contractor with reasonably precise specifications. *Id.* at 457. "A contract is reasonably precise if it reasonably and precisely lists items required; common sense dictates that items not required by the contract do not obligate the contractor to provide them." *Brown*, 313 Wis. 2d 497, ¶ 13.

¶ 22.   The Bronfelds argue the City of River Falls never approved any reasonably precise specifications for traffic control, safety signs, and barricade placement. However, the undisputed evidence demonstrates otherwise. The project manual contains over 250 pages

---

[3] Governmental immunity extends to a subcontractor even though it has a contract with a general contractor rather than with a governmental authority. *See Jankee v. Clark County*, 222 Wis. 2d 151, 165–66, 585 N.W.2d 913 (Ct. App. 1998), *revd on other grounds*, 2000 WI 64, 235 Wis. 2d 700, 612 N.W.2d 297.

134

of specifications for the Main Street-Maple Street project. The project manual has an entire section titled "Maintenance of Traffic," which totals nine pages. This section contains numerous specifications for safety signs and barricade placement. The project manual also requires compliance with the Wisconsin Manual, which provides several other relevant specifications.

¶ 23. In addition, the project manual calls for a traffic control plan. The traffic control plan approved by the city specifies particular traffic control devices that must be used and mandates where they must be placed. Together, the project manual, the Wisconsin Manual, and the traffic control plan create a reasonably precise plan for sign and barricade placement. As the trial court aptly noted, "To imagine that it's not [a reasonably precise plan] would be very difficult in this case."

¶ 24. The Bronfelds argue no reasonably precise specifications exist because the record does not indicate Monarch submitted an updated traffic control plan during construction, as required by the project manual. However, the absence of an updated plan does not make the project manual and original traffic control plan any less precise. What is dispositive is the fact that River Falls compelled Pember to follow the original traffic control plan which, along with the project manual, contained reasonably precise specifications.

¶ 25. The Bronfelds also argue the project manual and traffic control plan are not reasonably precise because they only provide "approximate locations" for sign and barricade placement. However, specifications need not spell out every minute detail of a project to qualify as "reasonably precise." We rejected a similar argument in *Brown*. *See Brown*, 313 Wis. 2d 497, ¶ 11.

¶ 26. In *Brown*, the contract between a contractor and the Wisconsin Department of Transportation re-

quired the contractor to install energy absorbing terminals within sixty days of beginning a highway construction project. *Id.*, ¶ 3. The contractor complied with this requirement, but the plaintiffs alleged the contractor should have installed the energy absorbing terminals as soon as it was feasible to do so. *Id.*, ¶ 13. In the plaintiffs' view, because the Department of Transportation did not require installation of the terminals immediately after the preparatory work was completed, the contract was not reasonably precise. *Id.* We rejected this argument, noting:

> [A] contract which does not require a specific item or timetable for installation can be as precise as one which does require those items. If contractor immunity required a contract to list not only all work and materials required but all work and materials not required, state contracts would approach encyclopedic proportions. A contract is reasonably precise if it reasonably and precisely lists items required; common sense dictates that items not required by the contract do not obligate the contractor to provide them.

*Id.*

¶ 27.   The Bronfelds are essentially making the same argument we rejected in *Brown*. The plaintiffs in *Brown* argued the contract was not reasonably precise because it did not contain a requirement that energy absorbing terminals be installed as soon as feasible. The Bronfelds contend that the project manual and traffic control plan are not reasonably precise because they do not specify the exact locations for barricade placement at each stage of construction and do not contain specific provisions calling for "crosswalk closed" as opposed to "sidewalk closed" signs. In both cases, the plaintiffs point out safety precautions they believe the contracts should have included. However, the relevant question is

136

not what other safety precautions a contract should have included, but whether the specifications it actually included were reasonably precise. *See id.*, ¶ 11.

¶ 28.   The Bronfelds also argue that while the City of River Falls approved the specifications in the project manual and traffic control plan, it did not require Pember to follow these specifications. In support of this argument, the Bronfelds cite a number of project manual provisions that seem to delegate responsibility for safety to contractors working on the project. For instance, the project manual states that a contractor is responsible for compliance with "all Laws and Regulations applicable to the performance of the Work." It also states that, except where expressly required by applicable laws and regulations, River Falls is not responsible "for monitoring the Contractor's compliance with any Laws or Regulations." Similarly, the "[c]ontractor shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work."

¶ 29.   However, the safety provisions the Bronfelds cite do not change the fact that Pember was contractually obligated to follow the specifications in the project manual and traffic control plan. By mandating that Pember comply with these specifications, the City of River Falls curtailed Pember's discretion. For instance, the project manual contained an entire section of specifications on maintenance of traffic and required Pember to use certain kinds of barricades and to place them in certain locations. Why would the city have included these requirements if it intended to delegate to Pember complete discretion for traffic control, signs, and barricade placement decisions? Furthermore, there is no reason a contractor cannot be held generally responsible for safety on a job site while also

being required to follow reasonably precise specifications approved by a governmental entity. Governmental immunity and responsibility for safety are not mutually exclusive.[4]

¶ 30.   Here, the City of River Falls dictated which traffic control devices Pember was required to use and where these devices needed to be placed. It also decided Pember did not need to construct a temporary crosswalk and did not need to use a "crosswalk closed" sign as opposed to a "sidewalk closed" sign. These specifications were reasonably precise and significantly curtailed Pember's discretion. The specifications therefore meet the first prong of the *Lyons* test for government contractor immunity.

¶ 31.   The second prong of the *Lyons* test requires proof that the contractor conformed to the approved specifications. *Lyons*, 207 Wis. 2d at 457. As proof of compliance with the specifications, Pember produced pictures of the accident scene. These pictures demonstrate Pember used the barricades and signs mandated by the city and placed these barricades and signs according to the city's specifications. Pember also presented evidence that Wronski, the city engineer, had "no criticism" of the barricades and signs Pember used.

¶ 32.   There is no evidence that Pember failed to comply with the barricade and sign specifications in the project manual and traffic control plan. While the Bronfelds insinuate that Pember should have done something different from what the specifications required, they have not presented any evidence that

---

[4] The Bronfelds' argument would essentially render contractor immunity under *Estate of Lyons v. CNA Insurance Cos.*, 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996), illusory because the boilerplate language they cite is likely found in many municipal contracts.

Pember did not comply. Because the undisputed evidence demonstrates that Pember complied with the specifications, Pember has satisfied the second prong of the *Lyons* test.

¶ 33.   The final prong of the *Lyons* test requires a showing that the contractor warned the supervising governmental authority about possible dangers known to the contractor but not to the governmental official. *Lyons*, 207 Wis. 2d at 458. A contractor can satisfy this prong if it shows it was not aware that the reasonably precise specifications posed any danger. *See Brown*, 313 Wis. 2d 497, ¶ 15. Here, there is no evidence that Pember was aware of any dangers associated with the specifications in the project manual and traffic control plan. Consequently, there is no evidence that Pember "ignore[d its] duty to the public and [withheld] information about dangers that the government might not know about." *See Lyons*, 207 Wis. 2d at 457. Pember has therefore satisfied the third prong of the *Lyons* test.

*By the Court.*—Judgment affirmed.