N. PATRICK CROOKS, J.
¶ 61. (concurring). This case is about whether Musson Bros., Inc. (Musson) is an agent of a governmental entity under the test established in the Lyons case. See Estate of Lyons v. CNA Ins. Cos., 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996). I agree with the majority's conclusion that under the Lyons test, Musson is not an agent because Musson has not shown that it was acting pursuant to "reasonably precise specifications" as the first prong of the Lyons test requires. Musson is therefore not entitled to immunity. The grant of summary judgment should therefore be reversed. Although I do not join the majority opinion, I respectfully concur for reasons stated herein.
I.
¶ 62. In past cases, we have not focused on whether the governmental entity's decisions were leg *546 islative, quasi-legislative, judicial, or quasi-judicial as a first step in answering the Lyons question. Even if the court chooses to adopt that framework for the Lyons test, I am concerned that the majority may have taken an approach to the Lyons immunity analysis itself that could be read as changing the law on governmental contractor immunity. If that is the majority's intent, the best way to do so is to acknowledge that, and to offer more guidance to litigants, lawyers, and courts.
¶ 63. While the majority opinion (at ¶ 2 n.5) says that there is no intention to adopt a fundamental change in our immunity jurisprudence, I am also concerned that, due to some notable similarities, the majority opinion could be read as endorsing the type of fundamental change that Justice Gableman advocates in a concurrence in an unrelated governmental immunity case.[1] While I share Justice Gableman's dismay with some aspects of this court's immunity jurisprudence, I favor an incremental approach to correcting the problems. A good place to start would be to recognize that our prior cases have construed the ministerial duty exception to immunity too narrowly.[2]
*547 ¶ 64. The majority's approach provides little guidance as to how the showing it requires could be met. The majority concludes that "[T]he facts set out in support of summary judgment would not support a claim of governmental contractor immunity because Musson has failed to assert that the acts for which it claims immunity were 'acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.'" Majority op., ¶ 4.
¶ 65. In cases involving immunity, the analysis has usually focused on whether the alleged negligent acts were discretionary or non-discretionary, and immunity determinations often turned on such analysis. Here, the majority holds that Musson must make an initial showing before application of the three prongs of the Lyons test for governmental contractors claiming immunity. Specifically, the majority faults Musson for failing to "assert that the acts for which it claims immunity were 'acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions'...." See majority op., ¶ 59. Litigants may be unable to discern from this opinion what sort of facts they must allege in order to establish that immunity applies. When this court crafts a somewhat different analytical framework, the best practice is to clearly lay out the reasons for the change, and articulate what litigants must show to satisfy the standard.
¶ 66. There are striking similarities between the language of the majority and the language of Justice *548 Gableman's Bostco concurrence. Both opinions read the statute as requiring parties who would claim immunity to show that the alleged negligent act was related to the exercise of "legislative, quasi-legislative, judicial, or quasi-judicial functions." In Justice Gableman's Bostco concurrence, he advocates "restoring] Holytz by placing the burden on the government to show that it is entitled to immunity, as opposed to the status quo in Wisconsin, where it is now the plaintiffs responsibility to prove that immunity was pierced." Bostco, LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶ 113, 350 Wis. 2d 554, 835 N.W.2d 160 (Gableman, J., concurring). The Bostco concurrence endorses a test under which "[t]he governmental entity seeking to establish immunity bears the burden of proving" certain facts. Id. Similarly, under the majority's holding in this case, a governmental contractor who seeks to invoke statutory immunity bears at least the initial burden of establishing that the government entity's decisions were legislative, quasi-legislative, judicial, or quasi-judicial. Majority op., ¶ 2. Compare Bostco, 350 Wis. 2d 554, ¶ 103 (Gableman, J, concurring) ("governmental entities, officials, and employees should be entitled to immunity only for 'acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions'"), with majority op., ¶ 27 n.13 ("Mus-son does not specify whether the immunity it seeks is legislative, quasi-legislative, judicial or quasi-judicial in nature.").
¶ 67. Further, in this case, there was extensive briefing on the potential application of the ministerial duty exception to immunity, and yet the majority does not address the arguments or acknowledge its potential application. This might be viewed by some as consistent with Justice Gableman's suggestion that in immunity *549 cases analysis of ministerial duty should be "do[ne] away with." Bostco, 350 Wis. 2d 554, ¶ 103 (Gableman, J., concurring).
¶ 68. An incremental approach that would be more consistent with our jurisprudence would be one that addresses the problem of this court's overly narrow interpretation of ministerial duty. Our ministerial duty analysis at times turns into a search to find any discretion that could have been exercised, and then declaring immunity is required. Ruling out liability wherever any discretion is exercised essentially creates immunity for almost all actions. As an influential treatise noted:
Stating the reasons for the discretionary-ministerial distinction is much easier than stating the rule .... [T]he difference between "discretionary" and "ministerial" is artificial. An act is said to be discretionary when the officer must exercise some judgment in determining whether and how to perform an act. The problem is that "[i]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail."
McQuillin, Municipal Corporations § 53.04.10 (3d ed.) (quoted in Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶ 136, 235 Wis. 2d 409, 611 N.W.2d 693 (Prosser, J., dissenting)).
¶ 69. The fact that even a "directly ministerial" act involves "some discretion in the manner of its performance" can make it easy for courts to decline to find a ministerial duty where one in fact exists. Like Justice Gableman, I believe our cases have sometimes failed to recognize this and have employed too restrictive an interpretation of ministerial duty. {See Bostco, ¶ 109 (Gableman, J., concurring). While I do not favor *550 a fundamental shift in our jurisprudence, we should be mindful of the fact that declining to determine that a ministerial duty exists where any exercise of discretion can be detected leads to immunizing too much government conduct. We should apply the test concerning ministerial duty in a way that serves the important public policy objectives that underlie the reasons for permitting liability where a ministerial duty exists. We must do a better job of striking the balance between too much immunity, which creates a heavy burden for those who suffer harm from negligent government acts, and too much liability, which creates a heavy burden for taxpayers.
II.
¶ 70. This case concerns only one small subset of potential government agents — private governmental contractors.
¶ 71. Yet, the majority has serially cited public employee and other public official immunity cases. See, e.g., majority op, ¶¶ 22 n.12, 24, 26. Those cases are not relevant to the Lyons analysis and are advanced despite the presence of a line of private governmental contractor immunity cases that apply the Lyons test and private governmental contractor immunity principles in their proper contexts.[3] See, e.g., Bronfeld v. Pember Cos., Inc., 2010 WI App 150, 330 Wis. 2d 123, *551 792 N.W.2d 222; Estate of Brown v. Mathy Const. Co., 2008 WI App 114, 313 Wis. 2d 497, 756 N.W.2d 417.[4]
¶ 72. Here, the Lyons test determines which private governmental contractors are considered "agents" under Wis. Stat. § 893.80(4) such that they may be shielded by immunity.[5] In order to be deemed a Wis. Stat. § 893.80(4) "agent," Musson must show that:
(1) the governmental authority approved reasonably precise specifications;
*552 (2) the contractor's actions conformed to those specifications; and
(3) the contractor warned the supervising governmental authority about the possible dangers associated with those specifications that were known to the contractor but not to the governmental officials.
207 Wis. 2d at 457-58.
¶ 73. In this case, the parties dispute whether the first requirement of the Lyons test is met. Thus, the relevant inquiry is whether a governmental authority approved reasonably precise specifications addressing Musson's negligent conduct.
¶ 74. To determine whether a governmental authority approved reasonably precise specifications, I look to Musson's contract, which sets forth its obligations regarding the road construction project at issue. Musson's ability to independently choose the methods of construction on the project is governed by a "means and methods" clause in the contract, which provides:
[The contractor] is solely responsible for the means, methods, techniques, sequences, or procedures of construction described in and expressly required by the contract.
¶ 75. Under the "means and methods" clause, Musson was left with near-absolute freedom to choose the means and methods by which it constructed the street — irrespective of the means and methods actually preferred by the governmental authorities overseeing *553 the project. The Department of Transportation supported that interpretation when it concluded that the "means and methods" clause meant that Musson could choose its own method of construction relating to the storm sewers at issue. See majority op., ¶¶ 11-12.
¶ 76. Ultimately, Musson's substantial freedom under the "means and methods" clause dooms its argument that the government approved reasonably precise specifications addressing its alleged negligent conduct. To establish that a specification is reasonably precise, Musson must have had its discretion significantly curtailed in some way. Bronfeld v. Pember Cos., Inc., 2010 WI App 150, ¶¶ 29-30, 330 Wis. 2d 123, 792 N.W.2d 222 (requiring a showing by a governmental contractor that the specifications "significantly curtailed" the contractor's discretion in order to establish that specifications are reasonably precise under Lyons). The "means and methods" clause fails to clear that hurdle under these facts.
¶ 77. Because there was no government-approved reasonably precise specification that addresses Musson's negligent conduct, I conclude that Musson failed to establish that it is an "agent" under Wis. Stat. § 893.80(4) pursuant to Lyons. Therefore, Musson is not shielded by the grant of immunity set forth in Wis. Stat. § 893.80(4). Accordingly, I respectfully concur.
¶ 78. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this opinion.

 See Bostco, LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶ 103, 350 Wis. 2d 554, 835 N.W.2d 160 (Gableman, J., concurring):
1 would ... do away with the ministerial duty and known danger exceptions and restore our immunity jurisprudence to conform with § 893.80(4) and Holytz. That is, governmental entities, officials, and employees should be entitled to immunity only for "acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." Wis. Stat. § 893.80(4); see also [Holytz v. City of Milwaukee, 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962)].

 A brief definition of a "ministerial duty" is something that is "absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion for its *547 performance with such certainty that nothing remains for judgment or discretion." This definition is cited in Lister v. Board of Regents, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976), which takes language from Meyer v. Carman, 271 Wis. 329, 332, 73 N.W.2d 514 (1955) (quoting 18 Eugene McQuillin, Municipal Corporations § 53.33, at 225 (3d ed.)).

 An additional concern is the majority's apparent criticism of two private governmental contractor immunity cases. Majority op, ¶¶ 40-44. In a few cursory sentences, it calls into question the analyses of the court of appeals in Bronfeld v. Pember Cos., Inc., 2010 WI App 150, 330 Wis. 2d 123, 792 N.W.2d 222 and Estate of Brown v. Mathy Const. Co., 2008 WI App 114, 313 Wis. 2d 497, 756 N.W.2d 417. Majority op, ¶¶ 41, 44. Is the majority sub silencio overruling Bronfeld and Estate of Brown?

 In its analysis, the majority characterizes as precedential the court of appeals decision in Jankee v. Clark Cnty., 222 Wis. 2d 151, 585 N.W.2d 913 (Ct. App. 1998), rev'd by Jankee v. Clark Cnty., 2000 WI 64, 235 Wis. 2d 700, 612 N.W.2d 297. See majority op., ¶ 33. This court has not decided whether a court of appeals decision that has been reviewed by this court has precedential value.
In my view, when this court reviews a decision of the court of appeals, the court of appeals opinion no longer has precedential value. As this court stated in Blum v. 1st Auto & Cas. Ins. Co., 2010 WI 78, ¶ 54, 326 Wis. 2d 729, 786 N.W.2d 78, "[cjircuit courts should not be forced to engage in a legal analysis as to precisely which holdings in court of appeals decisions are still good law, or whether, based on some particular language in the supreme court decision, the general rule should not be applied." Such a rule would prevent that kind of confusion.

 This court has never addressed the propriety of the Lyons test, which appears inconsistent with the analysis of the court of appeals in Kettner v. Wausau Ins. Cos., 191 Wis. 2d 723, 530 N.W.2d 399 (Ct. App. 1995). The Kettner court determined that Wis. Stat. § 893.80(3), which sets forth a damage cap, applies only to "agents" who are subject to a master-servant relationship. 191 Wis. 2d at 734. The requirement of a master-servant relationship might not be established solely by establishing the three elements of the Lyons test, which determines if a private governmental contractor is an "agent" under Wis. Stat. § 893.80(4). Compare id. at 737 (discussing indicia of a right to control required in a master-servant relationship) with Lyons, 207 Wis. 2d at 457-58 (discussing the requirement of reasonably precise specifications).
*552 Thus, Wis. Stat. § 893.80(3) and Wis. Stat. § 893.80(4) appear to set forth different standards for the same statutory term, "agent." However, because no one in this case asks this court to revisit Lyons or Kettner or to resolve that apparent discrepancy, I employ the Lyons test assuming its propriety.