# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1158 |
| COMPLETE TITLE: | Showers Appraisals, LLC, Real Marketing, LLC and Mark W. Showers, <br>        Plaintiffs-Appellants-Petitioners, <br>    v. <br>Musson Bros., Inc. and West Bend Mutual Insurance Company, <br>        Defendants-Respondents-Cross-Appellants, <br>League of Wisconsin Municipalities Mutual Insurance and City of Oshkosh, <br>        Defendants-Cross-Respondents. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 343 Wis. 2d 623, 819 N.W.2d 316
(Ct. App. 2012 – Published)
PDC No: 2012 WI App 80

| | |
|---|---|
| OPINION FILED: | July 18, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 13, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Winnebago |
| JUDGE: | Barbara H. Key |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | CROOKS, J., ABRAHAMSON, C.J., BRADLEY, J., concur. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiffs-appellants-petitioners, there were briefs by *Daniel J. Posanski* and *Gerardo Medina Jr.* and *Dempsey Law Firm LLP*, Oshkosh, and oral argument by *Daniel J. Posanski*.

    For defendant-cross-respondents, there was a brief by *Bree A. Madison* and *Richard J. Carlson*, and *Silton Seifert Carlson S.C.*, Appleton, with oral argument by *Bree A. Madison*.

For the defendants-respondents-cross-appellants, there was a brief by *David G. Dudas* and *Joseph P. Putzstuck*, and *McCanna, Dudas & Kewley, S.C.*, Appleton, with oral argument by *David G. Dudas*.

An amicus curiae brief was filed by *Martha H. Heidt* and *Bye, Goff & Rohde, Ltd.*, River Falls, on behalf of the Wisconsin Association of Justice.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2011AP1158
(L.C. No.   2009CV1438)

STATE OF WISCONSIN                    :        IN SUPREME COURT

Showers Appraisals, LLC, Real Marketing, LLC
and Mark W. Showers,

      Plaintiffs-Appellants-Petitioners,

  v.

Musson Bros., Inc. and West Bend Mutual
Insurance Company,

      Defendants-Respondents-Cross-
      Appellants,

League of Wisconsin Municipalities Mutual
Insurance and City of Oshkosh,

      Defendants-Cross-Respondents.

**FILED**

**JUL 18, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed and remanded.*

¶1    PATIENCE DRAKE ROGGENSACK, J.    This is a review of a published decision of the court of appeals[1] that affirmed the Winnebago County Circuit Court's[2] grant of summary judgment in

---

[1] Showers Appraisals, LLC v. Musson Bros., Inc., 2012 WI App 80, 343 Wis. 2d 623, 819 N.W.2d 316.

[2] The Honorable Barbara H. Key presided.

favor of Musson Bros., Inc. (Musson). This case arises from flood damage to Mark Showers' property in the City of Oshkosh, where Musson was conducting sewer removal and installation as a contractor for the Wisconsin Department of Transportation (DOT). In granting and affirming summary judgment, the circuit court and court of appeals concluded that Musson was a governmental contractor entitled to immunity under Wis. Stat. § 893.80(4) (2011–12),[3] based on the court of appeals' decision in Estate of Lyons v. CNA Insurance Cos., 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996).

¶2 We conclude that where a third party's claim against a governmental contractor[4] is based on the allegation that the contractor negligently performed its work under a contract with a governmental entity, the governmental contractor must prove both that the contractor meets the definition of "agent" under Wis. Stat. § 893.80(4), as set forth in Lyons, and that the contractor's act is one for which immunity is available under § 893.80(4). Specifically, we conclude that for a contractor to come within § 893.80(4)'s shield of immunity, the contractor

---

[3] All subsequent references to the Wisconsin Statutes are to the 2011–12 version unless otherwise indicated.

[4] The court of appeals in Estate of Lyons v. CNA Insurance Cos., 207 Wis. 2d 446, 457, 558 N.W.2d 658 (Ct. App. 1996), used the term "governmental contractor" to refer to those independent private contractors that it concluded may be entitled to immunity under Wis. Stat. § 893.80(4), based on the nature of their contractual relationships with governmental entities. We continue this usage, but emphasize that the contractors involved are private entities whose affiliation with the government is through a contractual relationship for a particular project.

must prove it was acting as the governmental entity's agent in accordance with reasonably precise specifications, as set forth in Lyons. In this case, Musson has not shown that it was acting as a governmental entity's agent for purposes of the alleged injury-causing conduct because Musson was not acting pursuant to "reasonably precise specifications."

¶3 Moreover, pursuant to the plain language of Wis. Stat. § 893.80(4), we also conclude that a governmental contractor seeking to assert the defense of immunity should clearly allege in the pleadings why the injury-causing conduct comes within a legislative, quasi-legislative, judicial or quasi-judicial function as set out in § 893.80(4). In the context of this case, a governmental contractor would be required to assert that it was implementing a decision of a governmental entity that was made within the scope of the governmental entity's legislative, quasi-legislative, judicial or quasi-judicial functions.[5] Adherence to these statutory requirements for immunity under § 893.80(4) will avoid extending blanket immunity for claims of negligently performed work against governmental contractors when the sole basis for immunity is that the work was performed

---

[5] In other cases we have used the term "discretionary" to refer to those acts that are within Wis. Stat. § 893.80(4)'s "legislative, quasi-legislative, judicial or quasi-judicial functions." See, e.g., Lifer v. Raymond, 80 Wis. 2d 503, 511–12, 259 N.W.2d 537 (1977) (citing § 893.80(4)'s predecessor, Wis. Stat. § 895.43(3)). Our use of the statutory terms in this case, rather than the designation "discretionary," is not intended as a change to the immunity analysis, but rather as a recognition that the applicable standard is based on precise statutory language. See infra, ¶35.

pursuant to a contract with a governmental entity. Allowing governmental contractors to claim immunity in such instances would vastly expand the doctrine of governmental immunity.

¶4   Therefore, based on Musson failing to meet the standard for a Wis. Stat. § 893.80(4) agent, Musson is not entitled to immunity under § 893.80(4). Additionally, we conclude that the facts set out in support of summary judgment would not support a claim of governmental contractor immunity because Musson has failed to assert that the acts for which it claims immunity were "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," as required under § 893.80(4). Accordingly, Showers' claims should be analyzed no differently than negligence claims against other contractors.

¶5   Musson may therefore be liable if Showers is able to show that in performing its work under the government contract, Musson had a duty of due care to Showers, that Musson breached that duty, and that such breach was a cause of Showers' damages. Accordingly, we reverse and remand to the circuit court for further proceedings on Showers' claims against Musson consistent with this opinion. Additionally, because Musson's and the City's cross-claims were not fully litigated in the circuit court and were not addressed by the court of appeals, those claims should be addressed on remand.

## I.  BACKGROUND

¶6   In September 2007, the DOT and the City of Oshkosh entered into a state-municipal agreement for a sewer improvement

4

project along a stretch of Ohio Street in Oshkosh, which is also State Highway 44.  Under the agreement, the State (through the DOT) would provide substantial financing for the project, although the City was responsible for funding and construction of sanitary sewers and water mains, as well as the sealing of concrete joints.  The DOT would remain involved in the project, including overseeing the bidding process and being onsite during construction.

¶7   The DOT opened the Ohio Street project for bidding, informing potential bidders that, as contractors, they would be "responsible for any damages to property or injury to persons occurring through their own negligence or that of their employees or agents, incident to the performance of work under this contract, pursuant to the Standard Specifications for Road and Bridge Construction applicable to this contract."  The specifications applicable to the project were the State of Wisconsin Standard Specifications for Highway and Structure Construction.  These Standard Specifications consist of hundreds of pages of directions and specifications regarding how governmental contractors are to perform certain aspects of contracted projects.

¶8   After completion of the bidding process, the DOT awarded the contract to Musson, and the two entered into the Contract for Highway Work, which provided that DOT would pay Musson $4,393,833.15 for its work.  Musson began work on the Ohio Street project in spring 2008.

¶9 Prior to the commencement of the Ohio Street project, Mark Showers had contracted for the construction of a new building on the property he owned on the corner of Ohio Street and Sixth Avenue in Oshkosh. As part of that construction, Showers was required by city code to connect his downspouts, sump pump, and parking lot drainage to the municipal storm sewer. The construction of Showers' building was completed on or about November 30, 2007, and Real Marketing, LLC and Showers Appraisals, LLC,[6] began conducting their business at that location.

¶10 When the Ohio Street sewer project commenced in spring 2008, the City, the DOT, and Musson discussed certain aspects of how the project would proceed, one of which was whether the roadway was to be removed all at once, or whether it should be removed and repaired on a block-by-block basis. The parties purportedly agreed that the block-by-block approach would be best; however, there is no formal documentation of the parties' alleged agreement on this aspect of the project, and indeed, Musson has at times disputed whether there was such an agreement.

¶11 Whatever the parties did or did not agree to, Musson removed the entire roadway along Ohio Street, from the storm sewer's outlet at the Fox River to the end of the project,

---

[6] Mark Showers is the majority owner of Showers Appraisals, LLC, and Real Marketing, LLC. These entities collectively will be referred to throughout the opinion as "Showers" unless otherwise indicated.

around Ninth Street; disconnected the storm sewers in that reach; and placed a bladder at the discharge at the Fox River so that water would not flow from the river into the non-operational sewer system. Musson's decision to proceed in this manner caused some disputes between City officials and Musson, based on the City's concern that by removing the entire storm sewer, Musson would compromise the City's ability to manage storm water.

¶12 The DOT concluded that Musson's decision to remove the storm sewer along the project's reach, rather than on a block-by-block basis, was allowed under a provision in the Standard Specifications, referred to as the "means and methods" provision.[7] That provision states, in pertinent part, that the contractor "is solely responsible for the means, methods, techniques, sequences, and procedures of construction. The contractor is not responsible for the negligence of others in the design or specification of specific means, methods, techniques, sequences, or procedures of construction described in and expressly required by the contract."

¶13 On June 8, 2008, rain storms inundated the Ohio Street project site, dropping approximately 4.25 inches of rain in the area of the project site. The storm left water standing in the exposed roadbed outside Showers' property, and a manager with

---

[7] When Musson sought approval to remove the pavement and leave the roadbed exposed, Ryan Schanhofer of DOT informed Musson that there was nothing in the contract explicitly prohibiting that approach.

7

Musson reported that Musson's pumps were unable to maintain drainage for the amount of rain that had fallen. After viewing the project site outside his property, Showers noted multiple conditions that potentially impeded drainage (as well as other conditions that he alleged were contrary to the Standard Specifications), including mounds of soil in the roadbed and drainage inlets clogged with soil and debris. When Showers spoke with employees from the City and Musson regarding the standing water and the potential for damage from another large storm that was predicted, Showers was told that there was nothing that either entity could do to remedy the situation.

¶14 Following the substantial rain event of June 8, the City and Musson began to prepare a contingency pumping plan for the next rain storm that was forecast for June 12. On the evening of June 11, a Musson employee allegedly was placing pumps according to the plan; however, Showers and other neighbors in the area averred that the pumps either were not present or were not operating during the June 12 storm event. Marc Miller, a water maintenance officer with the City, could not confirm the exact number of pumps that he recalled seeing at the Ohio Street project site, nor could he confirm how many pumps were running at the relevant times.[8]

¶15 By 5:30 p.m. on June 12, water was overflowing from the storm sewers in Showers' parking lot, and the Ohio Street

---

[8] Schanhofer also stated that by the morning of June 13, there were no pumps present at or near Showers' property at the intersection of Ohio Street and Sixth Avenue.

8

roadbed was entirely flooded. Additionally, water had begun to overflow from another drainage basin into the stretch of Ohio Street near Showers' property. The June 12 storm was estimated to have dropped approximately 4.36 inches of rain on the area within 5.5 hours during the evening, in addition to near-continuous, but less intense rain throughout the entire day.

¶16 Following the June 12 rains, the basement at Showers' property flooded with more than seven feet of water. Showers retained an engineer who concluded that approximately 117,500 gallons of water had been trapped in the roadbed outside Showers' property for 15 to 18 hours, and that the hydrostatic pressure caused by that water eventually caused Showers' basement floor to rupture, thereby allowing the water to seep up into the basement. Showers' sump pump ran continuously following the storm, but because the pump was connected with the storm sewers, the discharge of the sump pump merely recycled water out into the roadbed, which then seeped back into Showers' basement. Neither the City nor Musson had informed Showers that the storm sewers had been disconnected. Because of the flooding, Showers incurred at least $140,000 in damages to his business and personal property, and was forced to relocate his businesses for four months while the Ohio Street property could be cleaned, repaired, and restored.[9]

---

[9] Notwithstanding these damages, experts averred that Musson complied with the Standard Specifications regarding maintenance of drainage during all phases of the Ohio Street construction project.

9

¶17 Showers commenced the present action by serving Musson and the City with a summons and complaint on July 23, 2009.[10] In pertinent part, Showers alleged that "improper drainage, design, maintenance, excavation, construction procedures, and failure to take corrective measures" caused flooding in Showers' basement following the June 8 and 12 storms. Accordingly, Showers sought relief from the City and Musson on the grounds that those entities were "jointly and severally liable to [Showers] for negligent acts or omissions which caused [Showers'] building to flood, resulting in damage to the building and personal property, including losses for repairs, replacements, clean up, diminished value, and loss of use and related damages and losses."

¶18 The City and Musson moved for summary judgment, each arguing that it was entitled to immunity for its acts relating to the Ohio Street sewer project; additionally, the City and Musson brought cross-claims against one another for indemnification. After considering affidavits and arguments by the parties, the circuit court granted summary judgment for the City and Musson on the basis that both entities were entitled to governmental immunity under Wis. Stat. § 893.80(4). Showers appealed the grant of summary judgment as to Musson, but not the grant of summary judgment dismissing his claims against the City. Therefore, Showers' claims against the City are no longer

_____

[10] Prior to commencing this action, on October 3, 2008, Showers served the City with a notice of claim as required under Wis. Stat. § 893.80(1) (2007–08).

10

a part of this case.   However, Musson did cross-appeal the dismissal of its indemnification claim against the City.

¶19 The court of appeals affirmed the grant of summary judgment for Musson.   Showers Appraisals, LLC v. Musson Bros., Inc., 2012 WI App 80, ¶1, 343 Wis. 2d 623, 819 N.W.2d 316.   The court concluded that under the test set forth in Lyons, Musson was entitled to governmental contractor immunity as a statutory "agent" under Wis. Stat. § 893.80(4).   Id.   Additionally, because the court concluded that Musson was entitled to immunity, it did not address Musson's or the City's cross-appeals.   Id.

¶20 Showers filed a petition for review, which we granted.[11]

## II.  DISCUSSION

### A.  Standard of Review

¶21 The circuit court granted summary judgment for the City and Musson on the basis of governmental immunity and governmental contractor immunity under Wis. Stat. § 893.80(4). The interpretation of a statute is a question of law that we review independently of the circuit court and the court of appeals, although we benefit from those courts' analyses.

---

[11] Following summary judgment, the City has appeared in this action in response to Musson's cross-appeal against the City for indemnification.  The City appeared in the court of appeals, was included as a party in Showers' petition for review, and has submitted briefs and argument before this court in favor of its position that both the City and Musson are entitled to immunity in this case.

11

Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581. In addition, determining whether governmental immunity exists for particular conduct requires the application of legal standards to the facts found, which is also a question of law for our independent review. Estate of Brown v. Mathy Constr. Co., 2008 WI App 114, ¶6, 313 Wis. 2d 497, 756 N.W.2d 417. Also, when we review a grant of summary judgment, we will affirm it if no genuine issue of material facts exists and "the moving party is entitled to judgment as a matter of law." Wadzinski v. Auto-Owners Ins. Co., 2012 WI 75, ¶10, 342 Wis. 2d 311, 818 N.W.2d 819.

### B. Governmental Contractor Immunity

¶22 The City and Musson assert that, under Wis. Stat. § 893.80(4),[12] Musson is entitled to immunity from liability for Showers' claims. In order to address that claim, we must interpret § 893.80(4). We therefore begin with the language of

---

[12] The statutory immunity afforded under Wis. Stat. § 893.80(4) has been referred to as "municipal" or "governmental" immunity, and is distinct from the sovereign immunity that the Wisconsin Constitution grants the State. See Anderson v. City of Milwaukee, 208 Wis. 2d 18, 28 n.11, 559 N.W.2d 563 (1997). Nonetheless, we have acknowledged that there is overlap in the principles governing whether a governmental entity or officer is entitled to immunity. See C.L. v. Olson, 143 Wis. 2d 701, 716 n.9, 422 N.W.2d 614 (1988). Therefore, although the immunity that Musson claims in this case could be the sovereign immunity conferred upon the DOT as a state agency (because of Musson's contract with the DOT), principles of governmental contractor immunity under § 893.80(4) have been raised as being applicable here. Neither the State nor the DOT was sued, so the right of a sovereign to consent to suit was never at issue. See Holytz v. City of Milwaukee, 17 Wis. 2d 26, 41, 115 N.W.2d 618 (1962).

that statute. Section 893.80(4) provides, in pertinent part, that "[n]o suit may be brought against any [governmental entity] . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

¶23 Our task when interpreting a statute is to discern the statute's meaning, which we presume is expressed in the language chosen by the legislature. Richards, 309 Wis. 2d 541, ¶20. If the meaning of the language is plain, we apply that meaning. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. Our analysis of statutory language also may be aided by considering prior decisions examining the relevant statutory provisions. See DeHart v. Wis. Mut. Ins. Co., 2007 WI 91, ¶15, 302 Wis. 2d 564, 734 N.W.2d 394.

¶24 Wisconsin Stat. § 893.80(4) was enacted in response to our decision in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962). See Coffey v. City of Milwaukee, 74 Wis. 2d 526, 532, 247 N.W.2d 132 (1976) (recognizing that what is now § 893.80(4) is the codification of Holytz). In Holytz, 17 Wis. 2d at 39, we abrogated the common law rule of governmental immunity for governmental entities, and stated that "henceforward, so far as governmental responsibility for torts

13

is concerned, the rule is liability [and] the exception is immunity."

¶25 Holytz excepted from that abrogation the acts of a governmental entity exercising its legislative, quasi-legislative, judicial or quasi-judicial functions. See id. at 40. That language carving out an exception to governmental liability now appears in Wis. Stat. § 893.80(4), with the addition of immunity for governmental officers, agents and employees, thereby including those individuals for whose acts the governmental entity would be liable under the doctrine of respondeat superior. See id.; see also Kettner v. Wausau Ins. Cos., 191 Wis. 2d 723, 729-30, 530 N.W.2d 399 (Ct. App. 1995) (limiting the type of agents for which § 893.80 may provide immunity).

¶26 When analyzing and applying Wis. Stat. § 893.80(4), we often have used the term "discretionary" as a shorthand to refer to decisions of a governmental entity that are legislative, quasi-legislative, judicial or quasi-judicial. See, e.g., Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693; C.L. v. Olson, 143 Wis. 2d 701, 710 n.5, 422 N.W.2d 614 (1988); Lifer v. Raymond, 80 Wis. 2d 503, 511-12, 259 N.W.2d 537 (1977); see also Lyons, 207 Wis. 2d at 453-54. Legislative and quasi-legislative functions generally refer to those policy choices made in an official capacity, e.g., when a governmental entity chooses one project design over another. See Lyons, 207 Wis. 2d at 453. Quasi-judicial functions generally refer to those acts that involve the

14

exercise of discretion in coming to a judgment; the availability of a public hearing on the judgment before a specialized board; and the imposition by a board of an appropriate final decision. See Coffey, 74 Wis. 2d at 534-35.

¶27 In the present case, the parties' arguments center on the application of Wis. Stat. § 893.80(4) in regard to a governmental contractor who claims immunity derived from the governmental entity with which the contractor has a contractual relationship.[13]  The court of appeals addressed a similar situation in Lyons.  There, the court examined whether a governmental contractor was entitled to immunity under § 893.80(4) when the contractor implemented a bridge design that had been selected by the contracting governmental entity. Because the court of appeals' decision in Lyons was grounded in the United States Supreme Court's decision in Boyle v. United Technologies Corp., 487 U.S. 500, 510–13 (1988), it is necessary to understand Boyle to place Lyons in proper perspective.

¶28 In Boyle, a governmental contractor was sued based on its sale of a helicopter to the United States Marine Corps.  Id. at 502.  The helicopter was alleged to have a design defect in the co-pilot's escape system, which prevented the opening of the

---

[13] Musson does not specify whether the immunity it seeks is legislative, quasi-legislative, judicial or quasi-judicial in nature.  We need not make that determination because we conclude that Showers' allegation that Musson negligently performed its construction responsibilities does not implicate any of the governmental entity functions excepted from liability pursuant to Wis. Stat. § 893.80(4).

escape hatch when the helicopter was submerged. Id. at 503. The alleged design defect resulted in the death of a pilot who survived a crash into water, but drowned because he could not escape from the helicopter. Id. at 502.

¶29 In analyzing whether the contractor's governmental-contractor defense had merit, the Supreme Court focused on whether the government contract required the contractor to "deliver helicopters with the sort of escape-hatch mechanism shown by the specifications" of the helicopter that the Marine Corps had chosen. Id. at 509. The Supreme Court reasoned that "the selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function." Id. at 511. The Court then concluded by setting out a three-part test to determine whether the relationship between the governmental contractor and the governmental entity was such that the contractor should be immune from liability for design defects in military equipment chosen by the Armed Forces: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512.

¶30 In explaining its test, the Supreme Court said, "[t]he first two of these conditions assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated—i.e., they assure that the design feature in question was considered by a Government officer, and not merely

16

by the contractor itself." Id. (emphasis added). In so explaining, the Supreme Court made clear that a discretionary act of a governmental officer is a necessary component to potential immunity for the governmental contractor. Accordingly, a governmental contractor's own "discretionary actions" would not have sufficed to afford the contractor immunity for its actions in Boyle.

¶31 In Lyons, the court of appeals also focused on a design defect that allegedly was a cause of an accident. Lyons, 207 Wis. 2d at 449. It is important to note that, as was the case in Boyle, it was the governmental entity in Lyons that made the choice of design that allegedly was a cause of the accident. Id. This design choice was made in the exercise of a legislative or quasi-legislative function of the governmental entity. Id. at 453. Because the governmental contractor performed its contractual tasks under reasonably precise specifications pursuant to the governmental entity's quasi-legislative design decision, the contractor functioned as a Wis. Stat. § 893.80(4) agent of the governmental entity when carrying out the entity's design decision. See id. at 457–58, 461. Therefore, the governmental contractor was entitled to the same level of immunity as would be accorded to the governmental entity had it been sued directly for its design choice. Id. at 454 (explaining the court's reliance on the rationale of Boyle where the governmental contractor defense precluded suit "if the challenged design choice was made by military officials").

17

¶32 *Lyons* adopted *Boyle*'s three-part test. *Id.* at 457-58. The court of appeals explained that a governmental contractor that follows governmental specifications is an "agent" within the meaning of Wis. Stat. § 893.80(4) when the contractor meets the three-part test of *Boyle*. *Id.* "This three-part test will ensure that state and municipal government, and the public at large, is able to make the best use of professional design assistance, but that professional contractors are not unfairly burdened by lawsuits when they follow governmental directives." *Id.* at 458.

¶33 Subsequent court of appeals decisions have affirmed the *Lyons* court's rationale regarding contractor immunity, stating, for example, that "[i]n *Lyons*, we expressly held that an independent contractor meeting the three-part test was an agent within the meaning of § 893.80(4)." *Jankee v. Clark Cnty.*, 222 Wis. 2d 151, 165, 585 N.W.2d 913 (Ct. App. 1998), rev'd on other grounds, 2000 WI 64, 235 Wis. 2d 700, 612 N.W.2d 297. The language of some of these cases may be read to suggest that the relevant question is merely whether a contractor satisfies the three-part test and is therefore an "agent" entitled to immunity. *See id.; see also Woychik v. Ruzic Constr. Co.*, 2001 WI App 280, ¶8, 248 Wis. 2d 983, 638 N.W.2d

18

394 (unpublished decision).[14] Indeed, the court of appeals' decision in the case at hand suggests that satisfaction of the elements of the Lyons test will be sufficient to immunize governmental contractors' conduct. See Showers Appraisals, 343 Wis. 2d 623, ¶22; see also Bronfeld v. Pember Cos., 2010 WI App 150, ¶12, 330 Wis. 2d 123, 792 N.W.2d 222.

¶34 However, analyzing whether the conduct of a governmental contractor was undertaken as a statutory "agent" within the scope of the immunity accorded by Wis. Stat. § 893.80(4) solely by reference to the three-part Lyons test may lead a court to err. Rather, an equally dispositive question in the § 893.80(4) immunity analysis is whether the relevant decision of the governmental entity that the governmental contractor implements is, itself, entitled to immunity under § 893.80(4) because it was made through the exercise of a legislative, quasi-legislative, judicial or quasi-judicial function of the governmental entity. Stated otherwise, only certain types of acts fall within the immunity shield of § 893.80(4). It was on such a foundation that both the Lyons and Boyle decisions stand because the governmental decision in

---

[14] Wisconsin Stat. § 809.23(3) does not prohibit this court's discussion of unpublished decisions when such discussion relies on the opinion solely to demonstrate that courts have used particular language from other cases, and does not rely on the decision for authoritative or persuasive value. See State v. Higginbotham, 162 Wis. 2d 978, 996-97, 471 N.W.2d 24 (1991). Moreover, because such use of unpublished decisions has such longstanding acceptance, see id., we need not decide now whether § 809.23(3) imposes any other limitations on this court's use of unpublished decisions in its opinions.

each case, i.e., the choice of design, was made by a governmental entity in the exercise of its legislative or quasi-legislative function.

¶35 Immunity is available to a governmental entity only for those governmental decisions that are made as an exercise of "legislative, quasi-legislative, judicial or quasi-judicial functions" as set out in Wis. Stat. § 893.80(4). Any statutory immunity to which an agent of the governmental entity may be entitled is dependent upon the immunity of the governmental act or decision that the agent was implementing when it caused an injury. This immunity inquiry under § 893.80(4)——examining whether a governmental entity's conduct was an exercise of a "legislative, quasi-legislative, judicial or quasi-judicial function"——gives effect to the legislature's prerogative regarding the circumstances in which immunity may be available under § 893.80(4). Although some of our cases have equated § 893.80(4)'s "legislative, quasi-legislative, judicial or quasi-judicial" standard with the term "discretionary," see, e.g., Olson, 143 Wis. 2d at 710 n.5; Lifer, 80 Wis. 2d at 511-12, and although our decision is not intended in any way to alter that standard, we do emphasize that the legislatively selected policy decision regarding immunity under § 893.80(4) is best honored by applying the legislature's chosen plain language, rather than a judicial distillation thereof. This approach comports with fundamental principles of statutory interpretation, under which the plain language of a statute is

20

presumed to most directly convey what the legislature means. See Kalal, 271 Wis. 2d 633, ¶44.

¶36 From the foregoing, when a governmental contractor seeks immunity under Wis. Stat. § 893.80(4), the contractor must show both that the contractor was an agent as that term is used in § 893.80(4), i.e., as is expressed in the Lyons test, and that the allegedly injurious conduct was caused by the implementation of a decision for which immunity is available for governmental entities under § 893.80(4). As discussed below, Musson has failed to show that it is an agent in accordance with Lyons. Nonetheless, because the plain language of § 893.80(4) demonstrates that the immunity analysis requires an element in addition to what is required by Lyons' agency test (namely, allegations that the injury-causing act was legislative, quasi-legislative, judicial or quasi-judicial in character), we set forth the applicable standard so that litigants and courts may engage in a complete analysis of whether immunity may be available in future cases.

¶37 The first and second requirements of the Lyons test, i.e., whether the governmental entity approved reasonably precise specifications that the governmental contractor adhered to when engaging in the conduct that caused the injury, limit when a governmental contractor is a statutory agent under Wis.

21

Stat. § 893.80(4).[15] Stated otherwise, the governmental entity must have had the right to control the tasks performed by the contractor with "reasonably precise specifications" and the contractor must have followed those specifications. When these facts are proved, the contractor is a § 893.80(4) agent of the governmental entity. See, e.g., Kettner, 191 Wis. 2d at 733-37 (explaining that not all conduct of agents comes within the scope of § 893.80; rather, only that conduct that may be imputed to a governmental entity as the act of the entity's servant comes within § 893.80).[16]

¶38 The principles of immunity for particular types of agents under Wis. Stat. § 893.80, as discussed in Kettner, should be read in harmony with the Lyons test and with the principles of governmental immunity enunciated in § 893.80(4). For example, the allegation in Lyons that the bridge was improperly designed by the governmental contractor, who undertook the design at the direction of the governmental entity, was the act of a § 893.80(4)-type agent because the

---

[15] We note that the third criterion for statutory agency set out in Lyons, that the contractor warned the governmental entity about dangers known to the contractor but unknown to the governmental entity, does not bear on whether statutory agency is present. Rather, it is grounded in a concern that the immunity accorded does not cut off information highly relevant to governmental decisions. Boyle v. United Techs. Corp., 487 U.S. 500, 512-13 (1988).

[16] The primary consideration in determining whether an act was undertaken by one who acts in the capacity of a servant is whether the principal had the right to control the conduct of the agent. Pamperin v. Trinity Mem'l Hosp., 144 Wis. 2d 188, 198-99, 423 N.W.2d 848 (1988).

governmental entity controlled the design choice and design choices are legislative or quasi-legislative functions.  See Lyons, 207 Wis. 2d at 452-58; see also Chart v. Dvorak, 57 Wis. 2d 92, 100-01, 203 N.W.2d 673 (1973) (recognizing that the decision to undertake a project, or how to design the project, may be immunized as the exercise of a legislative or quasi-legislative function).

¶39  However, if the allegation in Lyons were not that the design was a cause of the accident, and were instead that the contractor did not construct the bridge in a workman-like manner and thereby caused injury, such an allegation would not implicate a legislative, quasi-legislative, judicial or quasi-judicial function under Wis. Stat. § 893.80(4).  Accordingly, an allegation of negligent workmanship would not have the potential for immunity under § 893.80(4) for that specific injury-causing conduct, and no Lyons inquiry (to determine whether the contractor was a § 893.80(4)-type agent) would be necessary.  This conclusion is based on the scope of immunity contemplated by this court in Holytz, and by the legislature's codification of Holytz in what is now § 893.80(4).

¶40  Some cases applying Kettner's agency principles in the context of immunity inquiries could be read to suggest that "agent" may be interpreted broadly to afford immunity to all governmental contractors' conduct.  However, in light of Wis. Stat. § 893.80(4)'s explicit language limiting the scope of governmental immunity, immunity will be extended to governmental contractors only where the contractor acted as a "servant" for

23

the purposes of the challenged conduct. See Kettner, 191 Wis. 2d at 734-36. Indeed, as we explained above, this definition of "agent" is manifest in the Lyons test, which requires that a governmental contractor adhere to "reasonably precise specifications." Cf. Arsand v. City of Franklin, 83 Wis. 2d 40, 45-46, 264 N.W.2d 579 (1978) (defining servant as "one employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control").

¶41 Other cases following Lyons also illustrate that care in analysis is needed when a claim of governmental contractor immunity is made. For example, in Bronfeld, the court of appeals addressed an allegation that a subcontractor negligently erected barricades and failed to maintain the construction site so as to protect public safety. The plaintiff claimed that the contractor was therefore liable for the plaintiff's injuries, which occurred when she tripped over a barricade that the contractor had placed at the site. See Bronfeld, 330 Wis. 2d 123, ¶¶10, 12.

¶42 In Bronfeld, the government's general contractor had provided a detailed traffic control plan that the City of River Falls approved, and the subcontractor followed that plan. Id., ¶6. The court of appeals began by noting that placement of barricades is a discretionary duty, and therefore, if the City had placed the barricades itself, it would have been immune from suit pursuant to Wis. Stat. § 893.80(4). Id., ¶19. This

24

cursory determination of whether the governmental entity would have been entitled to immunity under the language of § 893.80(4) highlights the need for a more thorough immunity analysis for claims of governmental immunity.

¶43 After making this primary determination, the court in Bronfeld applied the Lyons test to determine whether the contractor was an agent.  The court concluded that the test was satisfied, and that the contractor was entitled to immunity, because (1) the City had provided reasonably precise specifications regarding traffic control and barricade placement by requiring and approving the traffic control plan the general contractor submitted; (2) the subcontractor complied with the those specifications; and (3) the subcontractor had not been aware of any dangers posed by the reasonably precise specifications.  See id., ¶¶24–33.

¶44 Bronfeld's cursory analysis of governmental contractor immunity under Wis. Stat. § 893.80(4) may be attributable to Brown, where the language used to apply Lyons' reasoning could be construed to afford immunity to governmental contractors' actions where the alleged injury did not arise from the contractor's implementing a governmental entity's decision that was made pursuant to a "legislative, quasi-legislative, [etc.] function," such as the adoption of a design or plan.  In Brown, the court seemed to emphasize the importance of whether there existed "reasonably precise specifications," without acknowledging that, for such specifications to afford immunity to a governmental contractor, the contractor's alleged injury-

25

causing actions must have been due to its implementation of a governmental entity's exercise of one of the functions for which immunity is accorded under § 893.80(4). See Brown, 313 Wis. 2d 497, ¶11 (stating that "[t]he question is not what other safety precautions might have been taken, but whether the safety requirements provided by DOT were reasonably precise specifications," without analysis of whether the allegedly injurious conduct had been undertaken pursuant to a legislative or quasi-legislative function of the governmental entity).

¶45 In sum, in addition to satisfying the Lyons test for governmental contractor immunity, a contractor asserting immunity must be able to demonstrate that the conduct for which immunity is sought was the implementing of a governmental entity's decision made during the exercise of the entity's legislative, quasi-legislative, judicial or quasi-judicial functions. To apply Lyons without analyzing the applicability of immunity under Wis. Stat. § 893.80(4) to the particular act for which liability is alleged could grant a governmental contractor broader immunity than the governmental entity itself would be entitled to under the statute. Accordingly, in the future, when a governmental contractor asserts that it is entitled to immunity under § 893.80(4), we encourage litigants and courts to adhere to the statutory standard to determine whether the alleged immunity-supporting functions are legislative, quasi-legislative, judicial or quasi-judicial.

¶46 Our conclusion regarding the intersection of the agency principles embodied in the Lyons test and the type of

26

acts for which governmental immunity may be afforded under Wis. Stat. § 893.80(4) is well-supported nationwide. For example, other jurisdictions have concluded that while governmental contractors will not be liable for injuries alleged to have arisen from defects in a design the government chose, "it is well settled that this rule of non-liability does not exempt a contractor from liability where the injury arises from the contractor's negligent performance of the work." Gaunt & Haynes, Inc. v. Moritz Corp., 485 N.E.2d 1123, 1126 (Ill. App. Ct. 1985); Rodriguez v. New Jersey Sports & Exposition Auth., 472 A.2d 146, 149 (N.J. App. Div. 1983) ("A public contractor may . . . be held liable when negligent in the execution of the contract."). Furthermore, a legal encyclopedia notes that "the courts are practically unanimous" in support of the proposition that a governmental contractor is not entitled to governmental immunity for injuries arising from negligent performance of the contract work. A.E. Korpela, Annotation, Right of contractor with federal, state, or local public body to latter's immunity from tort liability, 9 A.L.R. 3d 382 §§ 2(a), 5 (1966); see also 64 Am. Jur. 2d, Public Works and Contracts § 109 (2013 update) (discussing contractors' negligence in performing work; neglect or failure to comply with contract). This understanding of the doctrine of governmental contractor immunity has been echoed by legal commentators. See, e.g., Richard Ausness, Surrogate Immunity: The Government Contract Defense and Products Liability, 47 Ohio St. L.J. 985, 995 (1986).

## C.  Application

¶47 With the above principles in mind, we turn to the present case.  Although the parties have framed their arguments solely in terms of the Lyons test, we analyze Musson's claim for immunity under both requirements of Wis. Stat. § 893.80(4). This includes whether Musson is an agent under § 893.80(4), as determined by the Lyons test, as well as whether the conduct that is alleged to be a cause of injury is entitled to immunity under § 893.80(4) as the implementation of a legislative, quasi-legislative, etc. decision.  We conclude first that, under the Lyons tests, Musson has failed to demonstrate that it is an agent entitled to governmental contractor immunity. Furthermore, as guidance to future litigants, we examine why Musson's allegations in support of summary judgment fail to demonstrate that Musson was entitled to immunity as an agent implementing a legislative, quasi-legislative, judicial or quasi-judicial function of a governmental entity.

¶48 Under the Lyons test as applied to Wis. Stat. § 893.80(4), Musson was not an agent for which immunity was available.  The relevant contractual language (the Standard Specifications) demonstrates that Musson was not subject to "reasonably precise specifications" as is necessary to invoke

28

contractor immunity as an agent of a governmental entity.[17]  The primary provision upon which the parties focus their arguments and upon which we rely in concluding that the Lyons test is not satisfied is the "means and methods" provision in the Standard Specifications.[18]  The conduct for which Musson was responsible under the means and methods provision are, by definition, distinguishable from conduct for which immunity may be available for agents under § 893.80(4), as set forth in Lyons.

---

[17] As our discussion below should make clear, our reference to the Specifications as support for our conclusion that immunity is not available should not be read to suggest that the terms of a government contract may create immunity where none would otherwise exist by virtue of the legislative, quasi-legislative, judicial or quasi-judicial nature of the activities at issue.  Our reference to the Standard Specifications merely demonstrates that the parties apparently contemplated that Musson's performance of its construction responsibilities would not entitle Musson to the immunity that may be afforded to agents under Wis. Stat. § 893.80(4).

[18] Other sections in the Standard Specifications also support the contention that the parties contemplated that Musson was not subject to reasonably precise specifications under Lyons and could be held liable for any negligence in the performance of the construction.  For example:

- § 107.1(2), requiring the contractor to "[p]rovide all necessary safeguards, safety devices, and protective equipment.  Take all other actions that are reasonably necessary to protect the life and health of employees on the project and the safety of the public."

- § 107.11.1(3), requiring the contractor to "[a]ssume liability for all damage to public or private property resulting from contractor operations, defective work or materials, or non-execution of the contract."

29

¶49 The means and methods provision states, in relevant part, that Musson "is solely responsible for the means, methods, techniques, sequences, and procedures of construction." (Emphasis added.) In this context, being "responsible" for the "means, methods, [etc.]" involves both powers and duties. That is, Musson was not only empowered to take actions involving how the construction process was to proceed, Musson also had the responsibility for the actions it took, including incurring liability if its actions caused injury. See Black's Law Dictionary 1427 (9th ed. 2009) (defining "responsibility" as "liability"); see id. (noting that "responsible . . . simply means liable to be made to account or pay") (quoting H.L.A. Hart, "Changing Conceptions of Responsibility," in Punishment and Responsibility 186, 196-97 (1968)).

¶50 Many of Musson's day-to-day actions at the Ohio Street project site are chronicled in the daily logs of onsite activity kept by one of the DOT's engineers, Ryan Schanhofer. These logs note numerous instances of Musson taking actions without DOT or City approval, pursuant to Musson's independent responsibility under the means and methods provision. Throughout the course of the project, there were multiple occasions on which Schanhofer had to inform City officials that he could not stop Musson from proceeding on a certain course because Musson's action was within the "means and methods" provision. One of these actions was the removal of the entire roadbed of Ohio Street, rather than removing portions on a block-by-block basis. Other such actions included whatever steps Musson would take to ensure

30

proper drainage, as demonstrated by Schanhofer's note that Musson's cleaning silt screens in drainage areas was "up to the contractor."[19]

¶51 As discussed above, the nature of Musson's actions, taken pursuant to the means and methods provision, demonstrates that Musson had substantial independent decision-making authority in performing its tasks, such that Musson's relationship with the DOT for the conduct that is alleged to have resulted in harm cannot be characterized as that of a servant. See Arsand, 83 Wis. 2d at 45-46 (defining servant as one subject to the master's control or right of control). Such independent discretion is also contrary to Lyons' "reasonably precise specifications" requirement, in that a contractor may not possess such control over the alleged injury-causing action

---

[19] Moreover, the mere fact that DOT personnel were onsite during Musson's performance of the Ohio Street sewer work does not transform Musson's contractual performance into the implementation of legislative, quasi-legislative, judicial or quasi-judicial actions that are entitled to immunity. Tellingly, § 105.2(4) of the Standard Specifications provides that "[t]he department's review does not relieve the contractor of the responsibility for obtaining satisfactory results."

Similarly, where the Standard Specifications are silent on the safety measures or performance standards applicable in a given scenario, a contractor may not rely on that silence as a license to undertake whatever measures the contractor selects without threat of liability. Governmental contractor immunity must be based on the prior exercise of legislative, quasi-legislative, judicial or quasi-judicial functions by a governmental entity under Wis. Stat. § 893.80(4), which the governmental contractor implements as a statutory agent. Silence, without more, does not demonstrate the exercise of necessary governmental decision-making.

31

and still be considered an agent for purposes of governmental contractor immunity under Wis. Stat. § 893.80(4). Musson thus fails to satisfy the Lyons test and is not an agent under § 893.80(4).[20]

¶52 Next, having concluded that Musson is not entitled to immunity as an agent under the Lyons test, we also examine Musson's claim for immunity in light of the injury alleged and the plain language of Wis. Stat. § 893.80(4), which limits immunity to "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." Beginning with the injury that Showers has alleged, we note that Showers' allegations are different in kind from the allegations underlying the Lyons test for governmental contractor immunity. The substance of Showers' claim is not that Musson was negligent in its implementation of a decision made in the exercise of a governmental entity's legislative, quasi-legislative, judicial or quasi-judicial function, as was the case in Lyons. Rather, Showers alleges that Musson negligently performed its excavation, construction, and drainage responsibilities under the contract. Specifically, Showers' complaint alleges that

---

[20] Because Musson has failed to demonstrate that there were reasonably precise specifications that controlled any alleged injury-causing decision or conduct, we have no need to examine the second and third requirements of the Lyons test (i.e., whether the contractor followed such reasonably precise specifications and whether the contractor warned the governmental entity of any dangers associated with the specifications that were known by the contractor, but not by the governmental entity).

Musson is liable for "improper drainage, . . . maintenance, excavation, construction procedures, and failure to take corrective measures."

¶53 These assertions are fundamentally different from the assertion that a governmental entity negligently selected a design that a contractor implemented for a government project. Design selection is a type of governmental entity decision that we have determined is within the legislative or quasi-legislative function immunized under Wis. Stat. § 893.80(4). See, e.g., Chart, 57 Wis. 2d at 100-01 (recognizing legislative or quasi-legislative nature of design decision); Lange v. Town of Norway, 77 Wis. 2d 313, 318-20, 253 N.W.2d 240 (1977) (same).

¶54 In contrast, Showers alleges that Musson's performance of its construction duties, such as maintaining drainage at the worksite, did not meet the standard of due care for construction work. Cf. Brooks v. Hayes, 133 Wis. 2d 228, 234-35, 395 N.W.2d 167 (1986) (recognizing that a construction contract implicitly imposes a duty on contractors to perform work according to the standard of due care). An allegation such as Showers makes does not implicate the types of acts for which Wis. Stat. § 893.80(4) affords immunity to a governmental entity. Therefore, they cannot form the basis for immunity for a contractor. For a governmental entity to be accorded immunity under § 893.80(4), the entity must be able to show that the allegedly injurious act was done in the exercise of a legislative, quasi-legislative, judicial or quasi-judicial function. Musson has not shown that the acts that Showers asserts were a cause of injury——Musson's

33

alleged improper drainage, maintenance, excavation, and construction at the Ohio Street project——were the implementation of a governmental entity's exercise of legislative, quasi-legislative, judicial or quasi-judicial functions. Therefore, immunity under § 893.80(4) is not available for those acts.

¶55 In future cases, governmental contractors seeking immunity should include in their pleadings sufficient facts to demonstrate that the governmental entity from which the contractor would derive immunity was engaged in one of the functions for which immunity is available under Wis. Stat. § 893.80(4), and that the contractor was an agent with respect to injury-causing conduct.

¶56 Accordingly, Showers' claims, that Musson negligently performed the work required by the government contract, should be analyzed under standard negligence principles. See Coffey, 74 Wis. 2d at 531, 535–40 (setting forth elements of standard negligence analysis and applying those elements after determining that municipal officer was not entitled to immunity). Although ultimately Musson may be found not to have been negligent in its performance of its construction activities, summary judgment was inappropriate based on the substance of Showers' complaint.

### III. CONCLUSION

¶57 We conclude that where a third party's claim against a governmental contractor is based on the allegation that the contractor negligently performed its work under a contract with a governmental entity, the governmental contractor must prove

34

both that the contractor meets the definition of "agent" under Wis. Stat. § 893.80(4), as set forth in Lyons, and that the contractor's act is one for which immunity is available under § 893.80(4). Specifically, we conclude that for a contractor to come within § 893.80(4)'s shield of immunity, the contractor must prove it was acting as the governmental entity's agent in accordance with reasonably precise specifications, as set forth in Lyons. In this case, Musson has not shown that it was acting as a governmental entity's agent for purposes of the alleged injury-causing conduct because Musson was not acting pursuant to "reasonably precise specifications."

¶58 Moreover, pursuant to the plain language of Wis. Stat. § 893.80(4), we also conclude that a governmental contractor seeking to assert the defense of immunity should clearly allege in the pleadings why the injury-causing conduct comes within a legislative, quasi-legislative, judicial or quasi-judicial function as set out in § 893.80(4). In the context of this case, a governmental contractor would be required to assert that it was implementing a decision of a governmental entity that was made within the scope of the governmental entity's legislative, quasi-legislative, judicial or quasi-judicial functions. Adherence to these statutory requirements for immunity under § 893.80(4) will avoid extending blanket immunity for claims of negligently performed work against governmental contractors when the sole basis for immunity is that the work was performed pursuant to a contract with a governmental entity. Allowing governmental contractors to claim immunity in such instances

35

would vastly expand the doctrine of governmental immunity. Applying this rationale to this case, we conclude that Musson would not be entitled to immunity for Showers' claims that Musson negligently performed its work under a government contract, because Musson has not made a showing that Musson was an agent implementing a governmental entity's decision made within the scope of the entity's legislative, quasi-legislative, judicial or quasi-judicial functions.

¶59 Therefore, based on Musson failing to meet the standard for a Wis. Stat. § 893.80(4) agent, Musson is not entitled to immunity under § 893.80(4). Additionally, we conclude that the facts set out in support of summary judgment would not support a claim of governmental contractor immunity because Musson has failed to assert that the acts for which it claims immunity were "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," as required under § 893.80(4). Accordingly, Showers' claims should be analyzed no differently than negligence claims against other contractors.

¶60 Musson may therefore be liable if Showers is able to show that in performing its work under the government contract, Musson had a duty of due care to Showers, that Musson breached that duty, and that such breach was a cause of Showers' damages. Accordingly, we reverse and remand to the circuit court for further proceedings on Showers' claims against Musson consistent with this opinion. Additionally, because Musson's and the City's cross-claims were not fully litigated in the circuit

court and were not addressed by the court of appeals, those claims should be addressed on remand.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court.

¶61 N. PATRICK CROOKS, J. *(concurring).* This case is about whether Musson Bros., Inc. (Musson) is an agent of a governmental entity under the test established in the <u>Lyons</u> case. <u>See</u> <u>Estate of Lyons v. CNA Ins. Cos.</u>, 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996). I agree with the majority's conclusion that under the <u>Lyons</u> test, Musson is not an agent because Musson has not shown that it was acting pursuant to "reasonably precise specifications" as the first prong of the <u>Lyons</u> test requires. Musson is therefore not entitled to immunity. The grant of summary judgment should therefore be reversed. Although I do not join the majority opinion, I respectfully concur for reasons stated herein.

## I.

¶62 In past cases, we have not focused on whether the governmental entity's decisions were legislative, quasi-legislative, judicial, or quasi-judicial as a first step in answering the <u>Lyons</u> question. Even if the court chooses to adopt that framework for the <u>Lyons</u> test, I am concerned that the majority may have taken an approach to the <u>Lyons</u> immunity analysis itself that could be read as changing the law on governmental contractor immunity. If that is the majority's intent, the best way to do so is to acknowledge that, and to offer more guidance to litigants, lawyers, and courts.

¶63 While the majority opinion (at ¶2 n.5) says that there is no intention to adopt a fundamental change in our immunity jurisprudence, I am also concerned that, due to some notable similarities, the majority opinion could be read as endorsing

the type of fundamental change that Justice Gableman advocates in a concurrence in an unrelated governmental immunity case.[1] While I share Justice Gableman's dismay with some aspects of this court's immunity jurisprudence, I favor an incremental approach to correcting the problems. A good place to start would be to recognize that our prior cases have construed the ministerial duty exception to immunity too narrowly.[2]

¶64 The majority's approach provides little guidance as to how the showing it requires could be met. The majority concludes that "[T]he facts set out in support of summary judgment would not support a claim of governmental contractor immunity because Musson has failed to assert that the acts for which it claims immunity were 'acts done in the exercise of

---

[1] See Bostco, LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶103, ___ Wis. 2d ___, ___ N.W.2d ___ (Gableman, J., concurring):

> I would . . . do away with the ministerial duty and known danger exceptions and restore our immunity jurisprudence to conform with § 893.80(4) and Holytz. That is, governmental entities, officials, and employees should be entitled to immunity only for "acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." Wis. Stat. § 893.80(4); see also [Holytz v. City of Milwaukee, 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962)].

[2] A brief definition of a "ministerial duty" is something that is "absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." This definition is cited in Lister v. Board of Regents, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976), which takes language from Meyer v. Carman, 271 Wis. 329, 332, 73 N.W.2d 514 (1955) (quoting 18 Eugene McQuillin, Municipal Corporations § 53.33, at 225 (3d ed.)).

2

legislative, quasi-legislative, judicial or quasi-judicial functions.'" Majority op., ¶4.

¶65 In cases involving immunity, the analysis has usually focused on whether the alleged negligent acts were discretionary or non-discretionary, and immunity determinations often turned on such analysis. Here, the majority holds that Musson must make an initial showing before application of the three prongs of the Lyons test for governmental contractors claiming immunity. Specifically, the majority faults Musson for failing to "assert that the acts for which it claims immunity were 'acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions' . . . ." See majority op., ¶59. Litigants may be unable to discern from this opinion what sort of facts they must allege in order to establish that immunity applies. When this court crafts a somewhat different analytical framework, the best practice is to clearly lay out the reasons for the change, and articulate what litigants must show to satisfy the standard.

¶66 There are striking similarities between the language of the majority and the language of Justice Gableman's Bostco concurrence. Both opinions read the statute as requiring parties who would claim immunity to show that the alleged negligent act was related to the exercise of "legislative, quasi-legislative, judicial, or quasi-judicial functions." In Justice Gableman's Bostco concurrence, he advocates "restor[ing] Holytz by placing the burden on the government to show that it is entitled to immunity, as opposed to the status quo in

3

Wisconsin, where it is now the plaintiff's responsibility to prove that immunity was pierced." Bostco, LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶113, ___ Wis. 2d ___, ___ N.W.2d ___ (Gableman, J., concurring). The Bostco concurrence endorses a test under which "[t]he governmental entity seeking to establish immunity bears the burden of proving" certain facts. Id. Similarly, under the majority's holding in this case, a governmental contractor who seeks to invoke statutory immunity bears at least the initial burden of establishing that the government entity's decisions were legislative, quasi-legislative, judicial, or quasi-judicial. Majority op., ¶2. Compare Bostco, ___ Wis. 2d ___, ¶103 (Gableman, J., concurring) ("governmental entities, officials, and employees should be entitled to immunity only for 'acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions'"), with majority op., ¶27 n.13 ("Musson does not specify whether the immunity it seeks is legislative, quasi-legislative, judicial or quasi-judicial in nature.").

¶67 Further, in this case, there was extensive briefing on the potential application of the ministerial duty exception to immunity, and yet the majority does not address the arguments or acknowledge its potential application. This might be viewed by some as consistent with Justice Gableman's suggestion that in immunity cases analysis of ministerial duty should be "do[ne] away with." Bostco, ___ Wis. 2d ___, ¶103 (Gableman, J., concurring).

4

¶68 An incremental approach that would be more consistent with our jurisprudence would be one that addresses the problem of this court's overly narrow interpretation of ministerial duty. Our ministerial duty analysis at times turns into a search to find any discretion that could have been exercised, and then declaring immunity is required. Ruling out liability wherever any discretion is exercised essentially creates immunity for almost all actions. As an influential treatise noted:

> Stating the reasons for the discretionary-ministerial distinction is much easier than stating the rule.... [T]he difference between "discretionary" and "ministerial" is artificial. An act is said to be discretionary when the officer must exercise some judgment in determining whether and how to perform an act. The problem is that "[i]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail."

McQuillin, Municipal Corporations § 53.04.10 (3d ed.) (quoted in Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶136, 235 Wis. 2d 409, 611 N.W.2d 693 (Prosser, J., dissenting)).

¶69 The fact that even a "directly ministerial" act involves "some discretion in the manner of its performance" can make it easy for courts to decline to find a ministerial duty where one in fact exists. Like Justice Gableman, I believe our cases have sometimes failed to recognize this and have employed too restrictive an interpretation of ministerial duty. (See Bostco, ¶109 (Gableman, J., concurring). While I do not favor a fundamental shift in our jurisprudence, we should be mindful of the fact that declining to determine that a ministerial duty

5

exists where <u>any</u> exercise of discretion can be detected leads to immunizing too much government conduct. We should apply the test concerning ministerial duty in a way that serves the important public policy objectives that underlie the reasons for permitting liability where a ministerial duty exists. We must do a better job of striking the balance between too much immunity, which creates a heavy burden for those who suffer harm from negligent government acts, and too much liability, which creates a heavy burden for taxpayers.

II.

¶70 This case concerns only one small subset of potential government agents——private governmental contractors.

¶71 Yet, the majority has serially cited public employee and other public official immunity cases. <u>See, e.g.</u>, majority op., ¶¶22 n.12, 24, 26. Those cases are not relevant to the <u>Lyons</u> analysis and are advanced despite the presence of a line of private governmental contractor immunity cases that apply the <u>Lyons</u> test and private governmental contractor immunity principles in their proper contexts.[3] <u>See, e.g.</u>, <u>Bronfeld v. Pember Cos., Inc.</u>, 2010 WI App 150, 330 Wis. 2d 123, 792 N.W.2d

---

[3] An additional concern is the majority's apparent criticism of two private governmental contractor immunity cases. Majority op., ¶¶40-44. In a few cursory sentences, it calls into question the analyses of the court of appeals in <u>Bronfeld v. Pember Cos., Inc.</u>, 2010 WI App 150, 330 Wis. 2d 123, 792 N.W.2d 222 and <u>Estate of Brown v. Mathy Const. Co.</u>, 2008 WI App 114, 313 Wis. 2d 497, 756 N.W.2d 417. Majority op., ¶¶41, 44. Is the majority sub silencio overruling <u>Bronfeld</u> and <u>Estate of Brown</u>?

222; <u>Estate of Brown v. Mathy Const. Co.</u>, 2008 WI App 114, 313 Wis. 2d 497, 756 N.W.2d 417.[4]

¶72 Here, the <u>Lyons</u> test determines which private governmental contractors are considered "agents" under Wis. Stat. § 893.80(4) such that they may be shielded by immunity.[5]

---

[4] In its analysis, the majority characterizes as precedential the court of appeals decision in <u>Jankee v. Clark Cnty.</u>, 222 Wis. 2d 151, 585 N.W.2d 913 (Ct. App. 1998), <u>rev'd by</u> <u>Jankee v. Clark Cnty.</u>, 2000 WI 64, 235 Wis. 2d 700, 612 N.W.2d 297. <u>See</u> majority op., ¶33. This court has not decided whether a court of appeals decision that has been reviewed by this court has precedential value.

In my view, when this court reviews a decision of the court of appeals, the court of appeals opinion no longer has precedential value. As this court stated in <u>Blum v. 1st Auto & Cas. Ins. Co.</u>, 2010 WI 78, ¶54, 326 Wis. 2d 729, 786 N.W.2d 78, "[c]ircuit courts should not be forced to engage in a legal analysis as to precisely which holdings in court of appeals decisions are still good law, or whether, based on some particular language in the supreme court decision, the general rule should not be applied." Such a rule would prevent that kind of confusion.

[5] This court has never addressed the propriety of the <u>Lyons</u> test, which appears inconsistent with the analysis of the court of appeals in <u>Kettner v. Wausau Ins. Cos.</u>, 191 Wis. 2d 723, 530 N.W.2d 399 (Ct. App. 1995). The <u>Kettner</u> court determined that Wis. Stat. § 893.80(3), which sets forth a damage cap, applies only to "agents" who are subject to a master-servant relationship. 191 Wis. 2d at 734. The requirement of a master-servant relationship might not be established solely by establishing the three elements of the <u>Lyons</u> test, which determines if a private governmental contractor is an "agent" under Wis. Stat. § 893.80(4). <u>Compare</u> <u>id.</u> at 737 (discussing indicia of a right to control required in a master-servant relationship) <u>with</u> <u>Lyons</u>, 207 Wis. 2d at 457-58 (discussing the requirement of reasonably precise specifications).

Thus, Wis. Stat. § 893.80(3) and Wis. Stat. § 893.80(4) appear to set forth different standards for the same statutory term, "agent." However, because no one in this case asks this court to revisit <u>Lyons</u> or <u>Kettner</u> or to resolve that apparent discrepancy, I employ the <u>Lyons</u> test assuming its propriety.

In order to be deemed a Wis. Stat. § 893.80(4) "agent," Musson must show that:

> (1) the governmental authority approved reasonably precise specifications;
>
> (2) the contractor's actions conformed to those specifications; and
>
> (3) the contractor warned the supervising governmental authority about the possible dangers associated with those specifications that were known to the contractor but not to the governmental officials.

207 Wis. 2d at 457-58.

¶73 In this case, the parties dispute whether the first requirement of the Lyons test is met. Thus, the relevant inquiry is whether a governmental authority approved reasonably precise specifications addressing Musson's negligent conduct.

¶74 To determine whether a governmental authority approved reasonably precise specifications, I look to Musson's contract, which sets forth its obligations regarding the road construction project at issue. Musson's ability to independently choose the methods of construction on the project is governed by a "means and methods" clause in the contract, which provides:

> [The contractor] is solely responsible for the means, methods, techniques, sequences, or procedures of construction described in and expressly required by the contract.

¶75 Under the "means and methods" clause, Musson was left with near-absolute freedom to choose the means and methods by which it constructed the street——irrespective of the means and methods actually preferred by the governmental authorities overseeing the project. The Department of Transportation supported that interpretation when it concluded that the "means

8

and methods" clause meant that Musson could choose its own method of construction relating to the storm sewers at issue. See majority op., ¶¶11-12.

¶76 Ultimately, Musson's substantial freedom under the "means and methods" clause dooms its argument that the government approved reasonably precise specifications addressing its alleged negligent conduct. To establish that a specification is reasonably precise, Musson must have had its discretion significantly curtailed in some way. Bronfeld v. Pember Cos., Inc., 2010 WI App 150, ¶¶29-30, 330 Wis. 2d 123, 792 N.W.2d 222 (requiring a showing by a governmental contractor that the specifications "significantly curtailed" the contractor's discretion in order to establish that specifications are reasonably precise under Lyons). The "means and methods" clause fails to clear that hurdle under these facts.

¶77 Because there was no government-approved reasonably precise specification that addresses Musson's negligent conduct, I conclude that Musson failed to establish that it is an "agent" under Wis. Stat. § 893.80(4) pursuant to Lyons. Therefore, Musson is not shielded by the grant of immunity set forth in Wis. Stat. § 893.80(4). Accordingly, I respectfully concur.

¶78 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this opinion.

9